UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COLEEN DONOVAN-DRAPER, | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | |
| v. | : | Civil No. 21-14134 |
| BALLY'S PARK PLACE d/b/a BALLY'S ATLANTIC CITY; JOHN DOE, MARY DOE, ABC PARTNERSHIPS and XYZ CORPORATIONS, | : | **OPINION** |
| *Defendants*. | : | |

Presently before the Court is the motion by defendant Bally's Park Place, LLC for an order granting summary judgment on New Jersey's workers' compensation bar and dismissing plaintiff Coleen Donovan-Draper's complaint with prejudice [Dkt. 20]. The Court has considered the parties' written submissions [Dkt. 20, 23, 27] as well as oral argument advanced at the hearing convened on May 9, 2023 [Dkt. 33]. For the reasons set forth herein, the Court will grant the motion and dismiss the complaint with prejudice.

**I.    Background**

The underlying facts of this case are largely undisputed. Plaintiff, Coleen Donovan-Draper ("Plaintiff" or "Donovan-Draper"), instituted a civil-action Complaint in the Superior Court of New Jersey, Atlantic County, on June 17, 2021 [Dkt. 1-4], alleging personal injuries resulting from an August 20, 2019 incident during which she twisted her ankle on the sidewalk located at defendant Bally's Park Place, LLC

1

("Defendant" or "Bally's") in Atlantic City. [Dkt. 1]. The case was removed by Bally's to the United States District Court for the District of New Jersey, Camden Vicinage, on July 26, 2021 pursuant to diversity jurisdiction. *Id.*

Plaintiff was an employee of Bally's and worked as a bartender at Bally's beach bar. *See* Bally's Statement of Material Facts ¶ 3 [Dkt. 20-2] ("Bally's SOF"); Plaintiff's Response to Defendant at *5 [Dkt. 23] ("Opp."). On August 20, 2019, Plaintiff was dropped off for work by her mother on the sidewalk that runs along Park Place. Bally's SOF ¶ 4; Opp. at *7. Plaintiff testified that she was dropped off at the sidewalk because it was the easiest and probably the safest way to enter her workplace. Bally's SOF ¶ 5. Plaintiff further explained that Bally's doors were close to where she was dropped off and that her time clock was right there by the boardwalk entrance. Bally's SOF ¶ 6. Plaintiff testified that she twisted her ankle on an alleged uneven paver located along the sidewalk. Bally's SOF ¶ 7. Plaintiff then began receiving workers' compensation benefits. Bally's SOF ¶¶ 8-9; Opp. at *5. While receiving workers' compensation benefits, Plaintiff filed the instant action alleging negligence claims against Bally's to recover for her personal injuries. Bally's SOF ¶ 10.

In the course of discovery, Bally's produced a lease agreement indicating that Bally's is the lessee of the premises at issue and assumed, via the lease, all responsibilities for maintenance of the property, including all maintenance responsibilities with respect to the sidewalks. Bally's SOF ¶¶ 36-37. Also among the discovery exchanged was certain Atlantic City municipal ordinances governing property maintenance. Sidewalk maintenance under Article II § 222-13 of the ordinance includes a commercial operator's responsibility to grade, pave, repair, and maintain its

sidewalks. Bally's SOF ¶ 39, Exhibit H ("The grading, paving, curbing, repairing and maintenance of all sidewalks shall be the responsibility of the owner of the respective premises fronting on such sidewalks"). Further, Article II § 222-19 of the ordinance provides that "[a]ll sidewalks and driveways shall be adequately maintained free of large cracks, holes and settlement which may cause tripping or other hazards to pedestrians. requires that all side operators to remove rubbish and debris from their respective sidewalks." Bally's SOF ¶ 39, Exhibit H.

Bally's presented its EVS Manager Dunia Barreda ("Ms. Barreda") for deposition. Ms. Barreda has been Bally's EVS Manager for the past 7 years. Bally's SOF ¶ 12. Ms. Barreda testified that Bally's Grounds Team members were responsible for walking the sidewalks in search of anything that needed to be reported to Facilities for repair. Bally's SOF ¶ 13. According to Ms. Barreda's testimony, a Bally's Grounds Team member was assigned to every shift throughout the day and was expected to walk the exterior sidewalks at least once a shift. Bally's SOF ¶ 14. Ms. Barreda further stated that Bally's supervisors would also be walking the sidewalks on a daily basis as part of their responsibilities. Bally's SOF ¶ 15. Ms. Barreda explained that EVS employees and supervisors were responsible for looking for things that may need to be reported to Facilities and EVS employees would report cracks in the sidewalk that they saw to the Facilities Department for repair. Bally's SOF ¶¶ 16-17. Bally's EVS employees would use heavy porters to sweep the sidewalks clean and would also maintain the sidewalk by performing snow removal and deicing services along the sidewalk as necessary. Bally's SOF ¶¶ 18-19. Employees used a mini truck with a salt speeder as well as snow blowers, a mini tractor, and shovels for snow removal and de-icing on the sidewalks and entrance

areas. Bally's SOF ¶¶ 20-23. Ms. Barreda also explained that Bally's EVS employees would power wash the sidewalks and would use gas and electric power washers and a mini tractor with double hose power to perform that work. Bally's SOF ¶¶ 24-25. Ms. Barreda explained that Bally's EVS employees would use stanchions, caution tape, and caution signs to block off areas that were being power washed. Bally's SOF ¶ 26. Ms. Barreda additionally testified that Bally's EVS employees would further maintain the sidewalk by perform trash and debris removal. Bally's SOF ¶ 27. Ms. Barreda stated that the EVS team has a 24/7 hotline to respond to clean up calls reported by other employees immediately for a quick dispatch. Bally's SOF ¶¶ 28-29. For example, if someone threw up on the sidewalk, that can be reported for immediately clean-up by Bally's employees. Bally's SOF ¶ 30.

    Bally's also presented its former Director of Facilities, Mary Kramer ("Ms. Kramer"), for deposition. The Facilities Team is responsible for performing any necessary repairs on the premises, which includes any necessary repairs to the sidewalks and its pavers. Bally's SOF ¶ 32. Ms. Kramer explained that in the event of cracked or uneven pavers, Bally's would retain an outside contractor to make the repairs. Bally's SOF ¶ 33. Ms. Kramer personally recalled having to replace pavers on the Bally's exterior sidewalk in an area by the bus garage. Bally's SOF ¶ 34. Ms. Kramer stated that she bid out that sidewalk repair job to a contractor. Bally's SOF ¶ 35.

    Upon the conclusion of discovery, Bally's filed the instant motion seeking an order granting summary judgment in its favor and dismissing Plaintiff's complaint with prejudice on the asserted basis that Plaintiff's negligence claim is barred by the exclusive

remedy Provision of the New Jersey Workers' Compensation Act, N.J. Stat. Ann. §§ 34:15–1 et seq. ("the Act"); N.J.S.A. 34:15–8.

## II. Legal Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits

5

or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Andersen*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Discussion

Bally's seeks summary judgment in its favor on the asserted grounds that Plaintiff's common law action is barred by the exclusive remedy provision of the New

Jersey Workers' Compensation Act. Workers' compensation laws establish a tradeoff whereby employees who agree to the terms of the statutory scheme relinquish their right to pursue common-law remedies against their employers in exchange for immediate and automatic entitlement to benefits for work-related injuries. *Charles Beseler Co. v. O'Gorman & Young, Inc.*, 188 N.J. 542, 546, 911 A.2d 47, 49 (N.J. 2006) (citing *Laidlow v. Hariton Mach. Co., Inc.*, 170 N.J. 602, 605, 790 A.2d 884, 886 (N.J. 2002)). The overarching purpose behind the Act is "'to shoulder on industry the expense incident to the hazards of industry; to lift from the public the burden to support those incapacitated by industry and to ultimately pass on to the consumers of the products of industry such expense.'" *Sheffield v. Shering Plough Corp.*, 146 N.J. 442, 461, 680 A.2d 750, 760 (N.J.1996) (quoting *Morris v. Hermann Forwarding Co.*, 18 N.J. 195, 197–98, 113 A.2d 513 (1955)). Accordingly, the Act "provide[s] a method of compensation for the injury or death of an employee, irrespective of the fault of the employer or contributory negligence and assumption of risk of the employee." *Harris v. Branin Transport, Inc.*, 312 N.J. Super. 38, 46, 711 A.2d 331, 335-36 (App. Div. 1998). As such, "[w]hen personal injury is caused to an employee by accident arising out of and in the course of his employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause, he shall receive compensation therefor from his employer." N.J. Stat. Ann. § 34:15–1.

The Act provides that workers' compensation benefits are "the exclusive remedy for an employee who sustains an injury in an accident that arises out of and in the course of employment." *Ahammed v. Logandro*, 394 N.J. Super. 179, 190, 925 A.2d 733, 739 (App. Div. 2007) (citing N.J. Stat. Ann. § 34:15–8); *see also Tomeo v. Thomas*

7

*Whitesell Const. Co.*, 176 N.J. 366, 370–71, 823 A.2d 769, 772 (2003) ("The immunity provided in N.J.S.A. 34:15–8 states that an employee's exclusive remedy for an accident that arises out of and during the course of employment is workers' compensation and the employer shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring [to such an employee][.]) (internal quotations omitted). "Fundamental to the Act is the premise that by accepting the benefits provided by its schedule of payments, the employee agrees to forsake a tort action against the employer." *Ramos v. Browning Ferris Indus., Inc.*, 103 N.J. 177, 510 A.2d 1152, 1155 (N.J.1986) (citing *Morris*, 18 N.J. at 197–98, 113 A.2d at 514 (1955)). However, the exclusive remedy provision of the Act does not preclude a plaintiff from bringing a common-law cause of action for injuries sustained in an accident that does not arise out of and occur in the course of employment.

"In determining whether an accident arises 'out of and in the course of employment,' our courts apply the premises rule established by the Legislature in the 1979 amendments to the Act." *Lapsley v. Twp. of Sparta*, 249 N.J. 427, 435, 266 A.3d 413, 418 (2022) (quoting *Kristiansen v. Morgan*, 153 N.J. 298, 316, 708 A.2d 1173, 1182; *see also Walker v. Saker ShopRite*, No. A-2770-19, 2021 WL 4058011, at *3 (N.J. Super. Ct. App. Div. Sept. 7, 2021) ("Entitlement to workers' compensation benefits is controlled by the premises rule set forth in N.J.S.A. 34:15-36."). "The premises rule is based on the notion that an injury to an employee that happens going to or coming from work arises out of and in the course of employment if the injury takes place on the employer's premises." *Id.* (internal quotations and citation omitted). Therefore, "'[t]he fact that [an employee] had punched out on the time clock does not preclude

8

compensability.'" *Id.* at 435-36, 266 A.3d at 418 (quoting *Brower v. ICT Grp.*, 164 N.J. 367, 372, 753 A.2d 1045, 1047 (2000).

The amendments provide that "[e]mployment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer." N.J.S.A. 34:15-36. "The Legislature used the phrase 'excluding areas not under the control of the employer' in its definition of employment because it intended to include areas controlled by the employer within the definition." *Kristiansen*, 153 N.J. at 316, 708 A.2d at 1182. "That phrase was intended to make clear that the premises rule can entail more than the four walls of an office or plant." *Id.* at 316–17, 708 A.2d at 1182–83. The New Jersey Supreme Court has recognized that "[c]ontrol as defined in the Workers' Compensation Act differs from control in the 'formal property law sense'; the former definition is more expansive." *Ramos*, 154 N.J. at 592, 713 A.2d at 491; *Cannuscio v. Claridge Hotel & Casino*, 319 N.J. Super. 342, 350, 725 A.2d 135 (App. Div. 1999). As such, "[i]f an employer has control over the area but does not own the area, employee injuries can still be compensable under the premises rule." *Giordano v. High Point Ins. Co.*, No. A-4971-14T3, 2016 WL 5899273, at *3 (N.J. Super. Ct. App. Div. Oct. 11, 2016).

"To determine whether an injury is compensable, '[t]he pivotal questions under the premises rule are (1) where was the situs of the accident, and (2) did the employer have control of the property on which the accident occurred.'" *Lapsley*, 249 N.J. at 436, 266 A.3d at 419 (quoting *Kristiansen*, 153 N.J. at 316-17, 708 A.2d at 1182-83); *see also Brower*, 164 N.J. at 372, 753 A.2d at 1047 ("the situs of the accident and the employer's

9

control of that location are the dispositive factors."). The Supreme Court of New Jersey has stated that "control exists when the employer owns, maintains, or has exclusive use of the property." *Kristiansen*, 153 N.J. at 317, 708 A.2d at 1183 (citing *Livingstone v. Abraham & Straus, Inc.*, 111 N.J. 89, 104, 543 A.2d 45, 53 (1988)); *Lapsley*, 249 N.J. at 436, 266 A.3d at 419 (2022); *Hersh v. Cnty. of Morris*, 217 N.J. 236, 245, 86 A.3d 140, 145 (2014). "Thus, whether the Act compensates an employee's injury that occurred during ingress or egress to work is a fact-sensitive determination regarding the employer's control over the situs of the accident." *Pilone v. Cnty. of Middlesex*, No. A-1676-19, 2021 WL 955165, at *2 (N.J. Super. Ct. App. Div. Mar. 15, 2021).

Plaintiff argues that summary judgment should be denied because Bally's has not established that the injury arose out of and in the course of Plaintiff's employment. Specifically, Plaintiff contends that her injuries were not incident to her employment, as contemplated under the Act, because Bally's exercised no control over her freedom of action at the time it occurred. Opp. at *10. Plaintiff concedes that the Supreme Court of New Jersey's recent decision in *Lapsey* focused on the issue of whether the employee had control of the property on which the accident occurred in determining compensability. *Id*. Plaintiff claims that Bally's reliance on *Lapsey* is misplaced, however, because *Lapsey* did not overrule a line of previous decisions analyzing the level of control employers exercised over employees' freedom of action. *Id*. In support of Plaintiff's position, Plaintiff identifies a number of earlier decisions wherein an injury was considered "in the course of employment" if it occurred when the employer exercised a level of control over the employee's freedom of action at the time of injury. *Id*. at *11-14. In response, Bally's submits that these cases recognize an employer's control over its employee as an alternative avenue to establish compensability under the

10

Act where the employer does not own, maintain, or have exclusive control of the premises where the injury occurred. Reply at *12.

The Court disagrees with Plaintiff's position that the analysis of the premises rule in *Lapsey* is somehow incomplete and instead finds that the decision supplies the correct legal framework for determining compensability and the application of the exclusive remedy provision in this case. As explained in *Lapsley*, "[t]he premises rule is based on the notion that an injury to an employee that happens going to or coming from work ***arises out of and in the course of employment*** if the injury takes place on the employer's premises." *Lapsley*, 249 N.J. at 435, 266 A.3d at 418 (emphasis added). Interpreting the premises rule, the decision makes clear that places under the control of the employer are considered "part of the employer's premises for purposes of workers' compensation benefits." *Id*. at 436, 266 A.3d at 419 (quoting *Hersh*, 217 N.J. at 249, 86 A.3d at 148) (internal quotations omitted). In view of the foregoing and under the circumstances where it is undisputed that Plaintiff was arriving at work for her shift as a bartender at the time of the injury, the Court finds that compensability may be established by demonstrating Bally's control of the sidewalk under the premises rule.

On this issue, Plaintiff argues that summary judgment should be denied because Bally's "maintenance" of the sidewalk does not establish that Bally's had "exclusive control" of the sidewalk sufficient to establish compensability and bar Plaintiff's suit. Opp. at *14-18. Plaintiff contends that there is no evidence showing Bally's had "exclusive control" and that the sidewalk is instead a "public place[]" controlled by the government. *Id*. As explained in *Lapsley*, however, control in the context of the Act can be satisfied with a showing of ownership, maintenance, or exclusive use of the premises

11

at issue. *Lapsley*, 249 N.J. at 436; 266 A.3d at 419. Thus, "exclusive control" is not a requirement and control can be established by demonstrating ownership or maintenance. *Id.* ("[C]ontrol exists when the employer owns, maintains, or has exclusive use of the property.").

Here, Defendant has adduced sufficient credible facts, which are not the subject of any genuine dispute, showing that Bally's exercised control over the subject sidewalk through its maintenance practices. As such, the Court finds that Plaintiff's injury is not the sort of incident that was intended to be precluded as incompensable under the Workers' Compensation Act and the 1979 amendment. Bally's EVS Manager, Dunia Barreda, confirmed in her deposition testimony that Bally's inspects and maintains the sidewalk where Plaintiff was injured.

> Ms. Barreda testified that Bally's Grounds Team members were responsible for walking the sidewalks in search of anything that needed to be reported to Facilities for repair. Ms. Barreda stated that a Bally's Grounds Team member was assigned to every shift throughout the day and was expected to walk the exterior sidewalks at least once a shift. Ms. Barreda further stated that Bally's supervisors would also be walking the sidewalks on a daily basis as part of their responsibilities. Ms. Barreda explained that EVS employees and supervisors were responsible for looking for things that may need to be reported to Facilities. Ms. Barreda stated that Bally's EVS employees would report cracks in the sidewalk that they saw to the Facilities Department for repair. Ms. Barreda described that Bally's EVS employees would use heavy porters to sweep the sidewalks clean. Ms. Barreda explained that Bally's EVS employees would further maintain the sidewalk by performing snow removal and deicing services along the sidewalk as necessary. Ms. Barreda described that Bally's EVS employees would use a mini truck with a salt speeder for snow removal and de-icing services. Ms. Barreda also described that Bally's EVS employees would use snow blowers to assist with its snow removal. Ms. Barreda explained that Bally's EVS employees would use a mini tractor with a plow to go around and clear snow from the sidewalks and entrances. Ms. Barreda stated that Bally's EVS employees would also use snow shovels to manually remove snow from the sidewalks and entrances. Ms. Barreda explained that Bally's EVS employees would power wash the sidewalks and would use gas and electric power washers to perform that work. Ms. Barreda stated that Bally's EVS

12

> employees would also use a mini tractor with double hose power to complete the power washing work. Ms. Barreda explained that Bally's EVS employees would use stanchions, caution tape, and caution signs to block off areas that were being power washed. Ms. Barreda testified that Bally's EVS employees would further maintain the sidewalk by perform trash and debris removal. Ms. Barreda stated that the EVS team has a 24/7 hotline to respond to clean up calls reported by other employees. The phone number can be accessed from in-house or regular phone, and anybody can contact the Clean Team to let them know if cleanup is needed. Ms. Barreda testified that through the hotline reported issues that need attention right away are responded to right away with a quick dispatch. For example, if someone threw up on the sidewalk, that can be reported for immediately clean-up by Bally's employees.

Bally's SOF ¶¶ 12-30.

The deposition testimony of Mary Kramer, Director of Facilities, further confirms Bally's role in maintaining the sidewalk.

> Mary Kramer was the Director of Facilities for the Bally's property during the time of the accident and confirmed in her deposition that Bally's is responsible for any necessary repairs on the subject sidewalk, including any repairs needed to the pavers. Ms. Kramer explained that in the event of cracked or uneven pavers, Bally's would retain an outside contractor to make the repairs. Ms. Kramer personally recalled having to replace pavers on the Bally's exterior sidewalk in an area by the bus garage. Ms. Kramer stated that she bid out that sidewalk repair job to a contractor.

Bally's Statement of Material Facts ¶¶ 31-35.

By way of additional facts establishing its maintenance of the sidewalk, Bally's produced a copy of its lease showing that, under the terms of the lease, Bally's assumed responsibilities for making all reasonably necessary and appropriate repairs to the sidewalk. Bally's SOF ¶¶ 36-37. Bally's also references Atlantic City municipal ordinances requiring that commercial operators on premises fronting sidewalk are responsible for the maintenance of the sidewalk. Bally's SOF ¶ 39, Exhibit H.

13

The Court finds that the foregoing facts pertaining to Bally's maintenance practices, which are not the subject of any genuine dispute,[1] are sufficient to satisfy the requisite showing of control within the meaning of the premises rule. Viewing these facts in conjunction with the absence of any dispute that Plaintiff was arriving at work for her shift as a bartender at the time of the injury, the Court concludes that Plaintiff's injury qualifies as compensable under the Act. Accordingly, Plaintiff's premises liability claim against Bally's is subject to dismissal pursuant to the exclusive remedy provision of the Act.

### IV. Conclusion

For the reasons set forth herein, the Court will grant Bally's motion for summary judgment on New Jersey's workers' compensation bar and dismiss plaintiff Coleen Donovan-Draper's complaint with prejudice.

October 18, 2023

s/ Joseph H. Rodriguez  
Hon. Joseph H. Rodriguez, U.S.D.J.

---

[1] *See* Opp. at *14 ("While the sidewalk in question was 'maintained' by Bally's. . .").